Pecic, J.
The principal if not only question arising upon the record, is in regard to the true construction of the act regulating descents, etc., as amended April 17, 1857 (1 Swan & Critchfield’s Stat. 501-2), and its effect upon the real estate of Mary Palmer, deceased. Did it thereupon descend to her brothers and sisters, and their representatives, who are not' of the blood of Hiram Palmer, the devisor of the said Mary, or to the brothers and sisters of Hiram Palmer and their representatives, who are not of the blood of Mary Palmer, from whom the descent is cast ? The plaintiffs fall within the first, and the defendants within the last class.
This assumes, indeed, that Mary Palmer took a fee simple-under the will of her deceased husband, and we think ourselves warranted in that assumption. The second defense, it is true, alleges that she took only a life estate, but the defendants’ counsel does not claim it in his brief, and we are clear that under the terms of the will, and section 49 of the act relating to wills then in force (Swan’s Stat. of 1841, 999), the devise to her can not be so limited. The whole context of the will, the apparent intent to dispose of his entire estate, the bequests to his relatives, to some nominal, and to others beneficial legacies, the express creation of a life estate to Elizabeth Sampson, and the terms of the specific and residuary bequests of all his real and personal estate to his wife, charged with the payment of debts and legacies, would, even at common law, confer upon the wife all the estate Avhich Hiram Palmer had therein, and a fortiori, must this be the case under the section of the “ act relating to wills,” above referred to, which provides that — “ Every devise of lands,, tenements or hereditaments, in any will hereafter made, shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate.”
This statute, at all events, settles that Mary Palmer tools* the entire estate of which her husband died seized.
To whom, then, did the estate descend upomher decease?'
*430 Mary Palmer died intestate, April 28, 1858, after the passage and taking effect of the amended act of April 17, 1857, and the descent from her must be cast pursuant to its provisions. The first section provides for the descent of ancestral estates, that is, of “estates which came to the intestate by descent, devise or deed of gift from any ancestor,” and in which special regard is had to the blood of such ancestor; while the second section provides for the descent of all inheritable estates, acquired in any and every other manner, and in which the blood of the intestate is principally regarded. The descent from Mrs. Palmer must be cast under one or the other of these sections. Brewster v. Benedict et al. 14 Ohio, 385. If under the first, it will pass to the defendants, under its third clause, as “ the brothers and sisters of the blood of” Hiram Palmer, “ from whom the estate came, and their legal representatives; ” and if under the second section, it descends to the plaintiffs, and those united with them in interest, under its third clause, as the “ brothers and sisters of the intestate of the whole blood, and their legal repsentatives.”
Was the estate of which Mrs. Palmer died seized, one which came to her by devise from any ancestor, within the meaning of the first section of said act?
The introductory part of said first section reads as follows : “ That when any person shall die intestate', having title or right to any real estate of inheritance in this State, which title shall have come to such intestate by descent or devise, or deed of gift from any ancestor, such estate shall descend and pass in parcenary to his or her kindred in the following course,” etc. The section then proceeds to regulate the course of descent, beginning with the nearest and extending to the remoter degrees of the common kindred of the intestate and the ancestor from whom the estate came, saving a life estate therein to the husband or wife, if living, in case there are no children or their legal representatives, and closes with casting the estate, on failure of brothers and sisters of the ancestor or their representatives, upon the brothers and sisters of the intestate and their representatives who may not be of the blood of the ancestor, and in default of such persons, upon the *431 next of kin of the intestate of the Wood of the ancestor from •whom the estate came. All the recipients of the inheritance, in the ascending and descending line, are required to be of the kindred and blood of the intestate. It would seem, therefore, that no one could take such inheritance under this section,unless he is of the kindred and blood of the intestate as well as of the person from whom the intestate derived it, and it would also seem to follow that the intestate must also, under this section, be of the same blood of the person from whom the estate came, else the kindred of the intestate could not be the kindred, in its ordinary legal acceptation, “descendants from the same stock or ancestor” of the previous owner, nor could there be such common or commingled blood as its various subdivisions seem to require. So, too, it would seem to follow that no person could be an ancestor of the intestate, within the meaning of this section, unless he is of the blood of the intestate, a descendant from the same stock. And the decisions in this State, heretofore referred to, enlarging the common law definition of the term “ ancestor,” in its application to our statutes of descents, are all consistent with this result, as they are, without exception, cases in which the person adjudged an ancestor was of. the same blood as the person whose ancestor he was held to be. If this view be correct, it would follow that the first section of the act of 1857 can not be resorted to, to direct the course of descent from Mrs. Palmer, for it is not'pretended that she was originally related by blood to her deceased husband; she had no issue by him, and the union terminated before she succeeded to the estate devised to her. There was not, therefore, any relationship by blood, nor even affinity, when she came to the estate, and the affinity between her and the relatives of her husband, created by her marriage, was severed before descent to be cast from her. 1 Denio, 25; 2 Barb. 331.
In Brewster v. Benedict et al., 14 Ohio Rep. 385, it is said by Hitchcock, J., that “ by ancestor, we understand, in common parlance, one from whom an estate lineally descended, but the word must be taken in connection with the whole subject of the act or instrument in which it is used.”
*432 In accordance with this view, it may now be regarded as the settled law of Ohio, that the word “ ancestor,” as used in our statutes of descents, means any one from whom the estate was inheritable by the intestate, as heir, in the absence of other and nearer heirs. 14 Ohio Rep. 385; Penn et al. v. Cox et al., 16 Ohio Rep. 32; Pricket v. Parker, 3 Ohio St. Rep. 394. But these cases do not decide but that the ancestor need not be related in blood to the intestate, so as to reconcile the whole section, as they were all cases in which such relationship in fact existed.
But it is unnecessary for us to decide that the word ancestor in this section must be limited to a blood relative of the intestate, because giving to that word all the latitude claimed for it under the Ohio cases — that is, any one, whether blood relative or not, from whom the intestate might have inherited the estate, as heir under the statute, in the absence of other or nearer heirs — the descent from Mrs. Palmer would still have to be regulated by the second instead of the first section of the act of 1857. The estate devised to her was a fee simple, and not a mere life estate, and the estate vested in her on the death of her husband in 1856, while the act of 1853, regulating descents, was in force, and the last named act therefore determines how she took the estate, and the relation in which she stood to the devisor. . The first section of the act of 1857 limits estates descendible under it to estates of inheritance the title to which “ shall have come to such intes tate by devise,” etc., “ from any ancestor,” etc. — thereby evidently referring to the time of its acquisition by the intestate, and the relation in which the intestate then stood to the person from whom it was acquired, and not to a relation which the provisions of the act of 1857 might then and thereafter create.
The estate of which Hiram Palmer died seized in 1856, was acquired by him by purchase and not by descent, devise or deed of gift from any ancestor, and consequently the descent from him, had he died intestate, would have been cast under the second section of the law of March 14, 1853 (Swan’s Statutes of 1854, 321, 322), and under the provisions of that *433 section, the estate of inheritance devised to her by the will, could not have descended to Mrs. Palmer as the widow of her deceased husband. The second section of the law of 1857 casts the whole estate upon the surviving husband or wife, in default of children or their representatives, instead of a mere life estate, and were this law applicable, the question first mooted would have to be determined; but the second section of the law of 1853 does not contain any such provision, nor cast a descent of the inheritance upon the wife in any contingency. She can not, therefore, be said to have received the estate vested in her by the will of Hiram Palmer, from “ any ancestor” within the meaning of the act of 1857, under which the descent is to be cast. We have also, in this connection, been referred to section 3 of the act of 1854, which provides that “ when any person shall die intestate, having title,” etc., and “there shall be no person living entitled to inherit the same by the provisions of this act, the said real estate shall pass to and be vested as an estate of inheritance in the husband or wife relict of such intestate, and if there be no such relict, it shall escheat to and be vested in the State of Ohio.”
The two previous sections of the statute had defined and limited the course of descents for all estates of inheritance from an intestate, and the order in which his descendants should take, commencing with the nearest, and extending, step by step, to his remotest kindred, and if the claimant thereto is not brought within one or the other of these sections, he can not, in any just or legal sense, be regarded as the heir oi of the kindred of the intestate; he is entirely without the line of descent, and the relation of ancestor and heir can not arise between him and the intestate. The estate is not to devolve upon the husband or wife under the third section, except upon the contingency that the intestate has no kindred whatever; and to suppose that the legislature intended the first section to apply to such a case, is an absurdity. Being dead and without any kindred when the descent was cast from him, there could not, at any time thereafter, be any kindred to which its provisions could be applied; and it is manifest, therefore, that the person from whom an estate is thus de *434 rived, is not an ancestor within the meaning of the first section, and, consequently, the recipient of an estate under the third section is not an heir nor'the last possessor an ancestor of his. The third section was not to create heirs to an estate, but to provide for a total failure of heirs and an escheat to the State; and the provision that before such estate shall escheat, the estate shall be vested in the husband or wife, if living, as an estate of inheritance, was inserted to describe the extent of the interest cast upon them, and not the character in which they are to take it. They, in such case, are to take the fee and not a lesser interest.
We are, therefore, clearly of the opinion that the estate of inheritance vested in Mrs. Palmer by the will of her deceased husband, upon her death, intestate, descends to the plaintiffs and those united with them in interest, as “ her brothers and sisters, and their representatives,” under the third clause of the second section of the amended act regulating descents and distributions, of April 17, 1857.
Judgment for plaintiffs, quieting them in the title and possession of the lands specified in the petition.
Scott, C.J., and Sutdiff, Gholson and Brinicerhoff, JJ., concurred.